# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY SESSION, 1999

FILED

July 9, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9807-CR-00282 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. THOMAS H. SHRIVER |
| ANAND FRANKLIN, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - Aggravated Sexual |
| | ) | Battery) |

FOR THE APPELLANT:

TERRY J. CANADY
211 Printer's Alley Building
Suite 400
Nashville, TN 37201

FOR THE APPELLEE:

MICHAEL E. MOORE
Solicitor General

LUCIAN D. GEISE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. JOHNSON
District Attorney General

WILLIAM REED
Assistant District Attorney
222 2nd Avenue, North
Nashville, TN 37201

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# **OPINION**

The appellant, Anand Franklin, was convicted by a Davidson County jury of one (1) count of aggravated sexual battery, a Class B felony. The trial court sentenced him as a Range I offender to eight (8) years incarceration.[1] On appeal, the appellant claims that the evidence presented at trial was insufficient to establish guilt beyond a reasonable doubt. After a thorough review of the record before this Court, we affirm the trial court's judgment.

## I

In early 1990, the appellant worked for the victim's father as a cook in his restaurant. Later that year, the appellant began babysitting M.S.,[2] the victim, and P.S., her sister. M.S. was five (5) years of age and her sister, P.S., was seven (7) years of age. Subsequently, both girls informed their aunt that the appellant had been doing "bad stuff" to both of them.

At trial, P.S. testified that the appellant babysat her and her sister while their mother was working during the day and night. Because their furnace was broken, the girls had to sleep by the fireplace at night to stay warm. One night while she was sleeping, she awoke when the appellant "stuck his finger in [her] peepee." She noticed that her underwear had been pulled down. P.S. was twelve (12) years old at the time of trial.

---

[1] Originally, the trial court ordered that the appellant serve his eight (8) year sentence in community corrections. The state appealed, and this Court reversed, holding that because the appellant was convicted of aggravated sexual battery under Tenn. Code Ann. § 39-13-504, he is statutorily ineligible for community corrections pursuant to Tenn. Code Ann. § 40-36-106(a) and (c). *See* State v. Anand Franklin, C.C.A. No. 01C01-9603-CR-00101, 1997 Tenn. Crim. App. LEXIS 764, Davidson County (Tenn. Crim. App. filed August 15, 1997, at Nashville).

[2] It is the policy of this Court not to reveal the names of minor victims of sexual abuse.

M.S., ten (10) years of age at the time of trial, testified that, on one occasion, the appellant placed her on his lap and "put his finger in [her] vagina." She further testified that she awoke one night and felt the appellant digitally penetrating her vagina. She recalled that "when [she] woke up like [her] underwear would be -- uh -- like half down and half up." Both girls testified that after the sexual assault, it was painful to urinate.

Each child testified that she did not inform her mother about the assault because she was frightened and believed that she was at fault for the sexual conduct. However, in late 1991, the girls told their aunt what had happened to them. After learning about the allegations from her sister, the children's mother, Darshan Kaur, confronted the appellant, and the appellant denied having sexual contact with P.S. and M.S. Subsequently, Mrs. Kaur took her children for a medical examination.

Sue Ross, a pediatric nurse practitioner with Our Kids Center, conducted a medical examination of M.S. in connection with the allegations of sexual abuse. She testified that she observed that the child's hymen was "scarred" at the six o'clock position. Although she acknowledged that this scarring was not necessarily caused by penetration, she stated that her physical examination findings were consistent with digital penetration. In addition, she testified that pain during urination could be consistent with digital penetration.

Ross also testified with regard to the medical examination of P.S.[3] There was evidence of "scarring" around the six o'clock position of the hymen. However, Ross testified that the exam was "non-specific" in that it was not "indicative of some sort of penetrating injury."

---

[3] Ross did not perform the medical examination on P.S. However, Julie Rosof, the nurse practitioner who examined P.S. was ill during the time of trial. Therefore, the parties agreed to allow Ms. Ross to testify regarding Rosof's findings.

The appellant testified on his own behalf at trial. He was a resident of India and came to the United States in connection with his work as a missionary for the Seventh Day Adventist Church. He developed problems with his eyesight and eventually moved to Nashville so that he could receive an operation on his eye. In February 1990, he began working at India Palace, a restaurant in Nashville. He developed a friendship with the proprietors of the restaurant, as well as with their two children. He often took care of the children at the restaurant and at their home.

The second week of January 1991, the appellant discontinued his employment at India Palace. He maintained contact with the family, however, because he was owed approximately $5,000 in unpaid salary, and Mrs. Kaur had borrowed over $2,000 from him. Whenever he requested the money from Mrs. Kaur, she became angry and threatened to deport him to India.[4] The last time the appellant could recall requesting the money was in November 1991. One month later, Mrs. Kaur's children telephoned the appellant and asked him to visit them at their home. When he arrived, Mrs. Kaur accused him of sexually abusing her children.[5]

The appellant testified that he was never alone with P.S. and M.S., and a family member was always present while he watched the children. Essentially, the appellant testified that Mrs. Kaur, in order to escape her $7,000 debt, manufactured the allegations and "coached" her daughters into accusing the appellant of sexual misconduct.

---

[4] Initially, the appellant's stay in the United States was limited to approximately four (4) to six (6) months. After he developed eyesight problems which required surgery, the appellant chose to remain in this country illegally.

[5] The appellant testified that Mrs. Kaur and her sister then slapped him and sexually assaulted him with a beer bottle. The appellant admitted that he did not inform law enforcement authorities about this assault. He stated that he was afraid that he would be deported if he reported the incident.

John Appling, a pediatrician, also testified for the defense at trial. Dr. Appling stated that, upon reviewing the medical histories and photographs taken of M.S. and P.S. during their medical examinations, he found no evidence of penetration in either child. Furthermore, he testified that the medical examinations were completely inconsistent with the children's versions of the sexual contact.

In rebuttal, the state called Suzanne Starling, also a pediatrician, to testify. Dr. Starling stated that her review of the histories and photographs revealed "non-specific" findings. However, she further testified that each girl's hymen did not appear normal.

The appellant was charged with aggravated rape of M.S. in Count One of the indictment, aggravated rape of P.S. in Count Two of the indictment and aggravated rape of M.S. in Count Four of the indictment.[6] The state dismissed Count Three of the indictment, which charged aggravated sexual battery. The jury acquitted the appellant on Counts One and Two. However, the jury found the appellant guilty of the lesser offense of aggravated sexual battery of M.S. in Count Four of the indictment. From his conviction for aggravated sexual battery, the appellant now brings this appeal.

II

In his sole issue on appeal, the appellant contends that the evidence is insufficient to establish his guilt beyond a reasonable doubt. He argues that

---

[6] At the conclusion of the state's case-in-chief, the state made an election of offenses. Count One referred to the instance where M.S. testified that she was digitally penetrated while sitting in the appellant's lap. Count Two referred to the instance where P.S. testified that she awoke when the appellant digitally penetrated her. Count Four referred to the instance where M.S. testified that she awoke when the appellant digitally penetrated her.

M.S.'s testimony is inconsistent and contradictory, and there is no affirmative medical proof establishing that the child was sexually assaulted. Therefore, he claims that no rational trier of fact could have found him guilty beyond a reasonable doubt.

**A.**

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the jury as the trier of fact. State v. Tuttle, 914 S.W.2d at 932.

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

**B.**

Aggravated sexual battery is defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim" where "[t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. §§ 39-13-502(a)(4), 39-13-504(a) (Supp. 1990). Sexual contact is defined as "the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (Supp. 1990).

**C.**

With regard to Count Four, the victim testified that she was sleeping by the fireplace in her home when she awoke because the appellant digitally penetrated her. She testified that her underwear had been partially pulled down, and she felt the appellant's finger touch her.

The appellant claims that M.S.'s testimony was inconsistent and contradictory and, therefore, should not be considered to support his conviction. Specifically, he points to instances where the victim told her mother and Sue Ross that the appellant did not sexually assault her. In support of his argument, the appellant cites Taylor v. Nashville Banner Publishing Co., 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978), which reiterated the well-settled law that contradictory

statements by a witness in connection with the same fact have the result of "canceling out" each other. The rule of cancellation applies only when the inconsistency is unexplained and when neither version of her testimony is corroborated by other evidence. Id. at 483; State v. Caldwell, 977 S.W.2d 110, 118 (Tenn. Crim. App. 1997); State v. Matthews, 888 S.W.2d 446, 450 (Tenn. Crim. App. 1993).

However, this Court has recently held that the rule regarding inconsistent statements only apply when in those instances where the witness' sworn statements are contradictory. State v. Roger Dale Bennett, C.C.A. No. 01C01-9607-CC-00319, 1998 Tenn. Crim. App. LEXIS 1328 at *5, Lawrence County (Tenn. Crim. App. filed December 31, 1998, at Nashville). The Court observed,

> Tennessee law has traditionally permitted a witness's prior inconsistent statement to be used to impeach the witness. Neil P. Cohen, et al., Tennessee Law of Evidence, § 613.1 at 312 (2nd ed. 1992). The evidence is not substantive evidence but is admissible only on the issue of the witness's credibility. Id. In this case, the defense used [the witness'] prior statements to discredit her trial testimony. A prior inconsistent statement, by definition, will always contradict trial testimony but it does not render that testimony a nullity. A witness's prior inconsistent statements raise questions of credibility. The jury determines the credibility of the witnesses and assesses the weight of their testimony. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In this instance, the jury chose to accept [the witness'] explanation for the discrepancies and accredited her trial testimony. The rule concerning a witness's contradictory statements does not apply in this case.

Id. at *5.

We find this reasoning to be equally persuasive in this case. The appellant refers to prior statements by the victim that she was not sexually assaulted by the appellant. However, these statements are unsworn statements which would normally be excluded as hearsay. The appellant presented these prior statements at trial to discredit the complaining witness. The victim, merely ten (10) years of age at the time of trial, explained that she initially denied the sexual

assaults because she was frightened and believed that she was at fault. After considering all of the evidence presented at trial, the jury accredited the victim's trial testimony, and this Court is not free to reevaluate the witness' credibility in this regard. The witness' statements did not "cancel each other out."

The victim testified that the appellant digitally penetrated her while she was sleeping, and she discovered that her underwear had been pulled down. The jury could have rationally found that the state proved the essential elements of the offense of aggravated sexual battery.

This issue is without merit.

### III

The evidence is sufficient for a rational trier of fact to find the appellant guilty of aggravated sexual battery beyond a reasonable doubt. Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE


_____
NORMA MCGEE OGLE, JUDGE

-10-